**BRITTANY L. SHERRON**
California State Bar No. 333762
**KYRA A. SINCLAIR**
California State Bar No. 355077
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Brittany_Sherron@fd.org

Attorneys for Mr. Nava Pacheco

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALDO NAVA PACHECO,<br><br>Defendant. | CASE NO.:  25-CR-3465-BJC<br><br>Hon. Benjamin J. Cheeks<br>Courtroom 3A<br>Date: January 5, 2026<br>Time: 2:00 P.M.<br><br>**MOTION TO SUPRESS EVIDENCE** |

### I.     Introduction

On August 11, 2025, unmarked vehicles and officers in civilian clothes surrounded Mr. Nava Pacheco, opened doors to his car, and intimidated him in an apparent immigration enforcement effort. However, the officers were looking for Mr. Nava Pacheco's much older brother—his brother who had been deported to Mexico more than a year before and had not been seen since. So, when officers conducted a vehicle stop on Mr. Nava Pacheco without the required reasonable suspicion to do so, they violated his Fourth Amendment Rights.

Accordingly, this Court should suppress all evidence flowing from the illegal traffic stop as fruits of the poisonous tree, including the arrest that followed, as well as any post-arrest statements made.

## II. Statement of facts

On August 11, 2025, officers working in a joint enforcement action in Escondido, California were looking for a man they believed did not have permission to enter or remain in the United States: Mr. Rogelio Nava-Pacheco. Exh. A. In May of 2024, Rogelio was arrested by Immigration Enforcement Officer Valle and deported to Mexico. *Id*. at 2-3. More than one year later, Officer Valle went back to the address he last knew Rogelio to live in the United States and watched the address for any sign of Rogelio. *Id*. Despite seeing no evidence that Rogelio had returned to the United States, Officer Valle coordinated an immigration enforcement action to arrest a man who looked similar to Rogelio. *Id*. at 3.

On August 11, 2025, officers working for Immigration Enforcement, Homeland Security Investigations, and the U.S. Marshal Service all waited outside the last known address of Rogelio Nava Pacheco in civilian attire. *Id*. at 4. When they saw a young man approach and enter a white Dodge RAM truck near the residence, the officers began to follow in their unmarked vehicles and eventually pulled the driver of the Dodge RAM over. *Id*. At that point, the driver of the truck claimed to be a minor…to be only 18. *Id*. at 8. The officers opened the doors of the RAM truck, front and back driver side. The driver of the truck got scared and drove away. *Id*.

After driving away, the Dodge RAM and an unmarked law enforcement vehicle got into a collision on a residential street in an apparent law enforcement maneuver. *Id*. Deportation Officer Valle hit the Dodge RAM head-on, pushing the RAM up into a random front yard. *Id*. at 9. Officers swarmed the driver of the Dodge RAM, pulled him from the vehicle, and immediately arrested him. *Id*. Later, officers learned that the driver of the truck was Ronaldo Nava-Pacheco, not Rogelio. *Id*. They had arrested the wrong man.

///

### III. Officers violated Mr. Pacheco's Fourth Amendment Rights

The Fourth Amendment prohibits unreasonable searches and seizures by the government. U.S. Const. amend. IV. An officer may not detain a motorist without "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Arvizu,* 534 U.S. 266 (2002). This basis must consist of "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Garcia-Camacho*, 53 F.3d 244, 246 (9th Cir. 1995) (citations and internal quotations omitted). In assessing reasonable suspicion, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273. The government bears the burden of proving that its agents lawfully executed a warrantless search or seizure. *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017).

Here, the officers claim they had reasonable suspicion to stop the Dodge Ram truck because they believed Mr. Nava Pacheco's brother was driving the truck and they knew his brother did not have legal status in the United States. However, the officers had an insufficient basis to believe that Mr. Nava Pacheco's brother was driving the Dodge RAM on August 12, 2025. Neither was there any independent suspicion to believe that Mr. Nava Pacheco himself was undocumented.

   A. There was no reason to believe Mr. Nava Pacheco's brother had returned to the United States.

On May 2, 2024, Deportation Officer Valle arrested Rogelio Nava Pacheco ("Rogelio") outside of his house in Escondido and processed him for deportation. Rogelio was deported to Mexico. Since May of last year, there has been no indication that Rogelio returned to the United States. He has had no arrests or other law enforcement contacts within the United States. He has not worked in the United States. He has not purchased or registered cars in the United States. There is no indicia whatsoever that Rogelio has been living in the United States again after he

3

was deported. And, in fact, he never returned.

The only information Officer Valle relied upon to substantiate his belief that Rogelio had returned was that the same red truck Officer Valle had seen Rogelio using the year before was parked near the residence, and then in the last few months preceding August of this year, the red truck disappeared:

> Since then, I have occasionally driven by the above-mentioned address where I've noticed both vehicles parked at the above-mentioned location. Recently in the last few months without keeping track I've noticed only the 2014 White Dodge Ram truck was present at the above-mentioned address.

Excerpt from Officer Valle's witness statement, Exh. A at 3.

Officer Valle had no other information to support his assertion that Rogelio had returned to the United States at any point after he was deported in May 2024.

B. There was no reason to believe Mr. Nava Pacheco was his brother.

When officers watched a young man exit the residence in Escondido and walk to the white Dodge Ram truck, they had no reason to believe that young man was Rogelio Nava Pacheco. To begin with, the young man they saw that morning was seven years younger than Rogelio. The young man was driving a white truck, whereas Rogelio was known to drive a red one. The young man even followed a different route than Officer Valle remembered Rogelio driving. Other than the young man being the same complexion as Rogelio (i.e. brown skin and black hair), there was nothing similar about them. The officers had a photograph of Rogelio, as well as his height, weight, and age to guide them. *See* Exh. B, Field Operation Worksheet. Despite the young man's differences, the officers conducted the traffic stop.

C. There was no other basis to stop the vehicle.

The officers had no other independent basis to conduct a traffic stop on Mr. Nava Pacheco. At that point, Mr. Nava Pacheco was unknown to law enforcement and the officers had no reason to believe he was acting in violation of the immigration laws or any other laws. Similarly, the officers did not observe any

traffic infractions that would give rise to a lawful stop.

The officers had run the registration of the white Dodge Ram, from which they learned the vehicle was not registered to either Mr. Nava Pacheco. From that search, the officers also knew that the truck was not registered to the Escondido address, and instead, was registered to an address in Valley Center. The officers also knew that the registered owner of the truck's last name is not "Nava Pacheco." None of the information they did know provided any independent basis for the reasonable suspicion needed to conduct the vehicle stop.

### IV.   Conclusion

Because the officers had no reasonable suspicion to stop the white Dodge Ram on August 11, 2025, the traffic stop was conducted in violation of Mr. Nava Pacheco's Fourth Amendment Rights. The stop itself, as well as any evidence that flowed from the stop must be suppressed.

Respectfully submitted,

Dated:  December 17, 2025            *s/ Brittany L. Sherron*
                                     Federal Defenders of San Diego, Inc.
                                     Attorneys for Mr. Nava Pacheco
                                     Email:  Brittany_Sherron@fd.org